REVISED – DECEMBER 20, 1999

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-20623
_____

GWYNNETH RUTHERFORD,

Plaintiff-Appellee,

versus

HARRIS COUNTY, TEXAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

November 29, 1999

Before EMILIO M. GARZA and PARKER, Circuit Judges, and FITZWATER, District Judge.[*]

FITZWATER, District Judge:

A county deputy constable who contended she had been passed over for promotion and subjected to adverse employment actions based on her sex sued her employer for discriminating against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. A jury found in her favor and the district court awarded damages, front pay, back pay, prejudgment interest, attorney's fees, and injunctive relief. The employer's

_____

[*]District Judge of the Northern District of Texas, sitting by designation.

appeal presents questions concerning the sufficiency of the evidence and the propriety of various evidentiary rulings, the jury charge, and the relief the district court awarded. We affirm in part, reverse and remand in part, and vacate and remand in part.

I

Plaintiff-appellee Gwynneth Rutherford ("Rutherford"), whom defendant-appellant Harris County, Texas ("Harris County") employed as a STEP[1] deputy constable, sued Harris County alleging that it was liable on various grounds under Title VII for discriminating against her based on her sex and retaliating against her. On motion for summary judgment, the district court dismissed her claims for discriminatory discharge, retaliation, and sexual harassment. The court denied the motion as to her causes of action for failure to promote her to a full-time deputy constable position[2] and for disparate treatment in various terms, conditions, and privileges of employment. The parties tried these claims to a jury, which returned a verdict in Rutherford's favor. Concerning her failure to promote claim, the jury awarded her $1.00 for

_____

[1]A STEP (Selective Traffic Law Enforcement) deputy constable was a non-permanent (*i.e.*, not a civil service), paid position. Rutherford originally obtained a position as an unpaid reserve deputy constable. Harris County hired her as a STEP deputy constable approximately three months later. STEP deputy constables enforced safety belt and speeding laws.

[2]This claim is labeled in the jury charge as a failure to "select [Rutherford] for a full time deputy position," and in the briefing as a failure to hire/promote cause of action. *See, e.g.,* Appellant Br. at 3; Appellee Br. at 2. For clarity, we refer to it as Rutherford's failure to promote claim.

emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life; $100,000 for lost wages in the future; and $25,000 for lost benefits in the future. It awarded her $50,000 for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life for her disparate treatment claim. The parties stipulated that the district judge would decide the question of back pay. The district court entered a final judgment on May 13, 1998 awarding Rutherford damages of $175,001.00, attorney's fees of $148,775.00, injunctive relief, post-judgment interest, and court costs. In calculating attorney's fees, the district court enhanced the lodestar by a 1.5 multiplier because Rutherford's attorneys had agreed to represent her on a contingent fee basis.

After the district court entered judgment, Harris County renewed its motion for judgment as a matter of law or for new trial. The district court denied the motion. Two days later, Rutherford filed a motion for Fed. R. Civ. P. 60 relief in which she asked the court to enlarge the scope of the injunctive relief awarded and grant her back pay and prejudgment interest. Rutherford cited both Rule 60(b) and 60(a), but the gravamen of her motion was that the district court had made a clerical error in entering a final judgment that omitted this relief. Later the same day, Harris County filed a notice of appeal from the final judgment, the court's findings of fact and conclusions of law, its order denying Harris County's motion for judgment as a matter of

- 3 -

law or for new trial, and the attorney's fee award.[3]

On August 17, 1998 the district court entered an order granting in part Rutherford's motion for relief from judgment. The court amended its findings of fact and conclusions of law to reflect a back pay award of $74,900, and found that Rutherford was entitled to recover prejudgment interest on the back pay. It also entered a final judgment that preserved the relief granted in the original judgment and added recoveries for back pay and prejudgment interest. Harris County filed an amended notice of appeal.

## II

Harris County contends the district court erred in overruling its motion for judgment as a matter of law and abused its discretion in denying its motion for new trial.

## A

We review *de novo* the denial of Harris County's motion for judgment as a matter of law, *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 285 (5th Cir. 1999), applying the same standard that the district court used. *Aetna Cas. & Sur. Co. v. Pendleton Detectives of Miss., Inc.*, 182 F.3d 376, 377 (5th Cir. 1999). "A court may grant a judgment as a matter of law if after a party has been fully heard by the jury on an issue, 'there is no legally sufficient evidentiary basis for a reasonable jury to have

---

[3]Rutherford cross-appealed from the judgment. She withdrew the cross-appeal, and the clerk of this court dismissed it, after the district court entered its August 17, 1998 judgment.

found for that party with respect to that issue.'" *Id.* at 377-78 (quoting Rule 50). "A court should view the entire record in the light most favorable to the non-movant, drawing all factual inferences in favor of the non-moving party, and 'leaving credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts to the jury.'" *Id.* at 378 (quoting *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994)). "In ruling on a Rule 50 motion based upon sufficiency of the evidence, we 'consider all of the evidence––not just that evidence which supports the non-mover's case––but in the light and with all reasonable inferences most favorable to the party opposed to the motion.'" *Information Communication Corp. v. Unisys Corp.*, 181 F.3d 629, 633 (5th Cir. 1999) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)). "The motion [is] properly granted '[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.'" *Id.* (quoting *Boeing*, 411 F.2d at 374). "On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for [JMOL] should not be decided by

which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question." *Deffenbaugh-Williams*, 188 F.3d at 285 (emphasis deleted) (quoting *Boeing*, 411 F.2d at 374-75).

We will affirm the denial of a motion for new trial "unless, on appeal, the party that was the movant in district court makes a clear showing of an absolute absence of evidence to support the jury's verdict, thus indicating that the trial court had abused its discretion in refusing to find the jury's verdict contrary to the great weight of the evidence." *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) (emphasis deleted and internal quotation marks omitted) (quoting *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1049 (5th Cir. 1998); *Dawsey v. Olin Corp.*, 782 F.2d 1254, 1261 (5th Cir. 1986)). "[R]eview of the denial of a new trial motion is more limited than when one is granted." *Id.*

B

We must first decide whether Harris County is entitled to judgment as a matter of law dismissing, or to a new trial of, Rutherford's failure to promote claim.

1

Title VII makes it unlawful *inter alia* for an employer to fail or refuse to hire an individual because of her sex. *Krystek v.*

*University of S. Miss.*, 164 F.3d 251, 255-56 (5th Cir. 1999) (sex discrimination claim based on denial of tenure) (citing 42 U.S.C. § 2000e-2(a)(1)).  It is familiar jurisprudence that to prevail on her failure to promote claim, Rutherford was first obligated to establish a prima facie case.  This required that she demonstrate that (1) she was not promoted, (2) she was qualified for the position she sought, (3) she was within the protected class at the time of the failure to promote, and (4) either the position she sought was filled by someone outside the protected class or she was otherwise not promoted because of her sex.  *See Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir. 1998) (addressing age discrimination formulation).[4]  Once she met this burden, her prima facie case raised an inference of unlawful discrimination.  *Id.* The burden of production then shifted to Harris County to proffer a legitimate, nondiscriminatory reason for not promoting her.  *Id.* When Harris County met its production burden, Rutherford became obligated to demonstrate that Harris County's articulated rationale was merely a pretext for discrimination.  *See id.*  "Under the *McDonnell Douglas-Burdine* framework, the parties dance an adversarial three-step, in which: (1) the plaintiff proves [her]

---

[4]Of course, a plaintiff can rely on direct evidence, but it "is rare in discrimination cases, [and] a plaintiff must ordinarily use circumstantial evidence to satisfy her burden of persuasion." *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc).  Rutherford does not contend that she adduced direct evidence.

prima facie case by a preponderance of the evidence; (2) the defendant rebuts the  presumption of intentional discrimination arising from the prima facie case by articulating legitimate, non-discriminatory reasons for the challenged action; and (3) the plaintiff counters by offering evidence that the legitimate, non-discriminatory reasons are really a pretext for discrimination." *Casarez v. Burlington Northern/Santa Fe Co.*, ___ F.3d ___, ___ 1999 WL 828604, at *3 (5th Cir. 1999) (footnote and citations omitted).

2

Harris County maintains that Rutherford did not carry her initial burden of establishing a prima facie case. It argues that Rutherford's unsatisfactory job performance in the temporary position of STEP deputy——failing to appear to testify in court on September 12, 1995, resulting in the dismissal of eight cases; making numerous errors in accident reports; and becoming belligerent when her supervisor, Corporal Michael V. Hartley ("Corporal Hartley"),[5] constructively criticized her reports——shows that she was not qualified for the position of full-time deputy. Harris County also contends the evidence did not permit a reasonable jury to find that it promoted Remon Green ("Green")

---

[5]Corporal Hartley received a promotion to the rank of sergeant during the latter part of Rutherford's tenure at Precinct 7. During the trial, counsel and witnesses at times referred to him as Sergeant Hartley. Because, at the time of trial, he once again held the rank of corporal, we will refer to him as Corporal Hartley.

rather than Rutherford to the full-time deputy position because of her sex. Harris County points to evidence that Terrie Davis ("Deputy Davis"), a female, held a full-time position in the Precinct 7 Traffic Safety Division (the division to which Rutherford was assigned), and that Arletha Wilson ("Deputy Wilson") was selected over a male for a full-time position in that division. It argues that Rutherford did not show that females as a group were excluded from full-time positions.[6]

## 3

"[W]hen, as here, a case has been fully tried on its merits, we do not focus on the *McDonnell Douglas* burden-shifting scheme. Instead, we inquire whether the record contains sufficient evidence to support the jury's ultimate findings." *Smith v. Berry Co.*, 165 F.3d 390, 394 (5th Cir. 1999) (citations omitted). "[W]e need not parse the evidence into discrete segments corresponding to a prima

---

[6]Harris County also appears to assert that Rutherford relied impermissibly on her subjective belief that Harris County did not promote her due to her sex. We recognize that such evidence is *alone* insufficient to create a jury question, *see Baltazor v. Holmes*, 162 F.3d 368, 377 n.11 (5th Cir. 1998), but Harris County does not cite us to any place in the record that reflects that Rutherford relied solely on her subjective belief to prove this claim.

Harris County also maintains that the fact that the jury initially informed the district court that it could not reach a verdict reflects "[t]he weakness of the evidence to support an affirmative finding of gender discrimination[.]" Appellant Br. at 14. We disagree. The jury note could reflect nothing more than the fact that two jurors (the note refers to "disagreeing person/s") initially assessed the evidence differently than did the majority. Later the same day, the jury returned a unanimous verdict in Rutherford's favor.

facie case, an articulation of a legitimate, nondiscriminatory reason for the employer's decision, and a showing of pretext. 'When a case has been fully tried on the merits, the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* ritual is unimportant.'" *Travis v. Board of Regents of Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997) (quoting *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 118 (5th Cir. 1993)), *cert. denied,* ___ U.S. ___, 118 S.Ct. 1166 (1998). We will therefore treat Harris County's assertions that Rutherford was not qualified for the full-time deputy position as its legitimate, nondiscriminatory reasons for not promoting her. We will decide whether a reasonable jury could have found that these reasons were pretexts for intentional sex discrimination, not whether Rutherford established a prima facie case.[7]

For Rutherford to prevail in this employment discrimination case, the record as a whole must contain evidence that creates a fact issue as to whether each of Harris County's stated reasons was what actually motivated it and must create a reasonable inference that Rutherford's sex was a determinative factor in Harris County's decision not to promote her. *See Krystek*, 164 F.3d at 256. "A

---

[7]Rutherford has treated the argument similarly. *See* Appellee Br. at 7 (arguing *inter alia* that she adduced evidence from which the district court and jury could reasonably have found that Harris County's stated reason for not promoting her was merely a pretext to hide its true discriminatory intent) and 9 (contending that Harris County orchestrated the events in order to question Rutherford's qualifications and place her in a false light).

Title VII plaintiff bears the burden of proving not only that the employer's purported reasons for taking an adverse employment action are pretextual, but also that the employer engaged in illegal discrimination." *Travis*, 122 F.3d at 263. We review the record to determine whether there is substantial evidence that Harris County decided not to promote Rutherford because she is female and that its stated reasons for not doing so are pretextual. *See Krystek*, 164 F.3d at 257.

Rutherford introduced sufficient evidence to permit a reasonable jury to find that Harris County promoted Green rather than Rutherford because of her sex. Viewed favorably to the verdict, the evidence demonstrated that when the position of sergeant became vacant, this created a series of successive openings in lower ranks because each person moved up to fill the next higher slot. The ripple effect created a vacancy for a full-time deputy position. The Precinct Captain testified at trial that seniority strongly influenced how vacancies were filled. Although Rutherford was next in seniority for the full-time deputy opening, Harris County did not interview her. Rutherford knew through rumors that the position would become available, but did not learn until after the fact that Green had filled it.

Green was junior in seniority to Rutherford and Tesma Walker ("Deputy Walker"), both females. At the time he was promoted, he was a civilian employee working as a radio dispatcher. He had

significantly less training and field experience in traffic safety than did Rutherford.  Rutherford had worked strictly on traffic safety as a reserve deputy.  Green did not train in traffic safety. As a radio dispatcher, Green learned radio codes, but this knowledge did not take long to acquire and provided no benefit in working the streets as a traffic safety deputy.  Rutherford had become familiar with the streets and addresses in her patrol area. She had also received training in the Intoxilyzer, radar certification, ticketing, accident reconstruction, and field sobriety.  She had taught Green how to write tickets.  Green had some experience as a reserve deputy in making traffic stops and also had experience patrolling county parks, but so did Rutherford. Most of the classes that Green had taken before becoming a full-time deputy were related to communications, not traffic safety.  He had not taken courses in the Intoxilyzer, field sobriety, pedestrian and bicycle accident reconstruction, or radar.

Although Green had been interviewed by the Traffic Safety Division when he began as a reserve deputy eight months earlier, he did not interview for the full-time deputy position.  Sergeant Nathan Wells ("Sgt. Wells") called Green into his office and told him that he would recommend him for the job.  Chief Deputy Michael C. Tippitt ("Chief Tippitt") concurred the next day and informed Green that he would get the promotion.[8]

---

[8]Harris County argues that the record lacks substantial proof of sex discrimination in the decision to promote Green because the

Harris County argued at trial that it promoted Green rather than Rutherford because he was better qualified.[9] It posited that

_____

evidence shows that Deputy Davis held a full-time position and that Deputy Wilson was selected over a male candidate. It maintains that Rutherford failed to show that females as a group were excluded from full-time positions in the Traffic Safety Division. We acknowledge that the jury could have concluded on this basis that Harris County did not discriminate against Rutherford, but there was also evidence from which it could reasonably have found that Harris County denied her the promotion based on her sex. For example, there was testimony that Deputy Wilson later became Sgt. Wells' girlfriend and that they eventually married, which could explain why she progressed through the ranks despite her sex. Where, as here, reasonable persons could differ in their interpretation of the evidence, and the facts and reasonable inferences would permit reasonable jurors to find in Rutherford's favor, we will not disturb the district court's denial of judgment as a matter of law. *See Baltazor*, 162 F.3d at 373.

[9]Although it did not advance this precise contention in its brief, Harris County asserted at oral argument that Rutherford was contending that she was clearly better qualified than was Green for the full-time deputy position. Its counsel quoted the following from our opinion in *Scott v. University of Miss.*, 148 F.3d 493, 508 (5th Cir. 1998): "[u]nless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise[.]" Harris County urged that Rutherford's evidence could not pass the jump-off-the-page/face-slap test. We disagree.

This passage from *Scott* originated in *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993), in which Judge Wiener explained in rather colorful terms the rationale for the rule that, generally, a court's belief that a less qualified person outside the protected class has been promoted over a person within the class will not of itself support a finding of pretext. *Id.* at 845. Rutherford did not attempt to prove pretext solely on the basis of her comparative qualifications. She introduced evidence that she was next in line for the position of full-time deputy and that seniority strongly influenced how vacancies were customarily filled. Moreover, the jury could reasonably have found that Harris County did not actually compare Rutherford's qualifications to Green's before deciding to promote him. There was evidence, for example, that supervisory personnel made the decision without interviewing either

Rutherford's spotty job performance as a temporary deputy included her failing to appear in court on September 12, 1995, resulting in the dismissal of eight cases; making numerous, severe errors in accident reports; and becoming belligerent when Corporal Hartley, her supervisor, constructively criticized her concerning the reports.[10] We conclude that the jury could reasonably have found these reasons to be pretexts for intentional sex discrimination.

Viewed favorably to Rutherford, the evidence established that on the date she failed to appear in court, she was required to attend a mandatory drug detection training class conducted by the Drug Enforcement Administration at a park located 20 minutes away from Precinct headquarters. When she was subpoenaed to appear in court and paged to testify, she followed the usual procedure, which specified that her supervisor communicate with the court concerning her scheduling conflict. Rutherford testified that when she was paged, she contacted her supervisor, Sgt. Wells, and that it was his fault that the miscommunication with the court resulted in dismissal of the cases. The jury could reasonably have found that

of them. The jury could not have impermissibly substituted its opinion for the views of those who had experience and expertise in the relevant field if the individuals who made the hiring decision did not compare the candidates' qualifications before promoting one over the other.

[10]Although Harris County cites evidence that Rutherford became belligerent when Corporal Hartley criticized her accident reports, *see* Appellant Br. at 7, 13, it has pointed to no place in the record that shows that Harris County actually considered this reason in deciding not to promote her or that it acted on this basis. We do not address this proffered reason further.

Harris County's asserted reliance on this ground for deeming Rutherford to be unqualified for the promotion was a pretext for intentional sex discrimination.

Concerning Harris County's contention that there were numerous, severe errors in accident reports that Rutherford had prepared, she adduced evidence that Corporal Hartley's criticisms were based on his personal preferences and were otherwise suspect. In January 1995 Sgt. Wells conducted a performance review of Rutherford in which he rated her "quality of paperwork/documentation" as 9 on a scale of 10. According to the grading scale, this meant that her work was "consistently neat, orderly and well done" and "[s]eldom requires checking/correction." Sgt. Wells also gave her high marks in several other categories. In approximately May 1995, however, Sgt. Wells asked Rutherford out on a date, called her off the highway and into his office for no apparent reason, paged her frequently when she left the office, and after one or two weeks, asked her if she would consider having sexual relations with him. Rutherford rejected Sgt. Wells' request. Corporal Hartley (who reported to Sgt. Wells) began in September 1995 marking as mistakes in her accident reports items that he had not designated as errors in June 1995. On several reports Corporal Hartley wrote and encircled the number of mistakes at the top of the page. Corporal Hartley based his criticisms on his personal experience, not on a state manual or Precinct policy. Some of the mistakes not previously marked involved not putting a

- 15 -

space between a comma and the next word in the sentence, not properly aligning an "X" mark in a box, and other arguably minor typographical errors. When asked at trial to explain what occurred between June and September 1995 to cause him to begin marking certain errors, he testified that he could not recall exactly. The jury could reasonably have inferred, given the stark contrast between the manner of grading Rutherford's accident reports in June and September 1995, that if Corporal Hartley's increased criticisms were genuine, he could have remembered why, in so short a time span, he had intensified the level of scrutiny.

Harris County emphasized at oral argument, and we have found in our review of the record, evidence that would have supported a verdict in Harris County's favor. The question we must decide, however, is not whether the jury could have returned a verdict for Harris County. The issue instead is whether the trial evidence permitted a reasonable jury to find that Harris County promoted Green rather than Rutherford due to her sex. Because we conclude that it did, we hold that the district court did not err in denying Harris County's motion for judgment as a matter of law or abuse its discretion in denying its motion for new trial with respect to Rutherford's failure to promote claim.

C

We next consider whether the jury could reasonably have found that Harris County subjected Rutherford to disparate treatment based on her sex.

1

"Title VII makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] . . . terms, conditions, or privileges of employment, because of such individual's . . . sex.'" *Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 873 (5th Cir.) (quoting 42 U.S.C. § 2000e-2(a)(1)), *cert. denied*, ___ U.S. ___, ___ S.Ct. ___ (1999). To prove her disparate treatment claim, Rutherford was required to establish a prima facie case of discrimination. This obligated her to demonstrate that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.) (pregnancy discrimination case), *cert. denied*, ___ U.S. ___, 119 S.Ct. 509 (1998).[11] The burden then shifted to Harris County to articulate a legitimate, nondiscriminatory reason for the employment action. *Id.* Once it did, Rutherford was required to prove that Harris County intentionally discriminated against her because of her sex. *Id.*

2

Harris County maintains the evidence did not permit a

---

[11]Had this been the rare case in which direct evidence of discrimination was available, Rutherford had the option of relying instead on such proof.

reasonable jury to find that it had discriminated against Rutherford based on sex. Rutherford "must provide some evidence, direct or circumstantial, to rebut each of the employer's proffered reasons and allow the jury to infer that the employer's explanation was a pretext for discrimination." *Scott v. University of Miss.*, 148 F.3d 493, 504 (5th Cir. 1998). "The trier of fact may not simply choose to disbelieve the employer's explanation in the absence of any evidence showing why it should do so." *Id.* We agree that as to at least the following alleged discriminatory acts, the jury could not reasonably have found in Rutherford's favor.

Rutherford testified that male deputy constables in the Traffic Safety Division, including Michael Warren, were permitted to take their cars home at night and keep them at all times. She complains that she and Deputy Walker, both females, were not allowed to do so. Harris County introduced evidence, however, that it was Precinct policy that supervisors and full-time traffic safety deputies had take-home vehicles. All STEP deputies who met the criteria to be call-out deputies were allowed to take vehicles home. Deputy Davis, a female deputy who was qualified as an on-call or call-out deputy, was allowed a take-home car. Rutherford did not qualify either as a full-time or as a call-out deputy at the time.

Rutherford testified that there was a restroom in the squad

room area that was not specifically designated for use by males or females.  Down the hall, there were restrooms separately designated for use by men or women.  Once, when she used the restroom in the squad room area, someone told her it was "for the guys."  Because she never observed women use it, she assumed they were not permitted to do so.  Deputy Walker, a female, testified without contradiction, however, that she used the squad room area restroom and was never prohibited from doing so.

Rutherford testified that Corporal Hartley required her, but not men, to respond to him by saying "Yes, Sir" or "No, Sir." Deputy Walker testified, however, that Precinct policy dictated that deputies refer to each other on the street by their respective titles——deputy, corporal, or sergeant——but that in the office they addressed each other by name.  She never heard Corporal Hartley require anyone to say "Yes, Sir" or "No, Sir" to him in the office. She called him by his first name in that setting.

Rutherford testified that Corporal C. Robert Francis ("Corporal Francis"), a male, returned her patrol car to her covered in mud and out of gas.  She did not introduce evidence that this isolated, neutral incident was in any way based on her sex, and Harris County adduced uncontradicted proof that Sgt. Wells orally reprimanded Corporal Francis for his conduct.

Rutherford testified that she was forced to wear a male-style bullet proof vest because there were no female-style vests.  Harris County introduced uncontested evidence, however, that a private

organization supplied the Precinct with vests of just one style. Harris County made available to male and female deputies alike the vests donated to it.

Viewing the evidence favorably to Rutherford, we hold that a reasonable jury could not have found on any of these grounds that Harris County intentionally subjected her to disparate treatment based on her sex.[12]

3

We must now decide whether Harris County is entitled to a new trial of Rutherford's disparate treatment claim. We hold that it is.[13]

The district court asked the jury in Interrogatory No. 3 whether it found "that Harris County intentionally discriminated against Gwynneth Rutherford on the basis of her gender by treating her less favorably than male employees in nearly identical circumstances with respect to her terms, conditions or privileges

_____

[12]In her brief, Rutherford asserts in conclusory fashion other acts of disparate treatment in addition to these grounds. *See* Appellee Br. at 15-16. She relied on some of them in closing argument. In view of our conclusion that she did not introduce sufficient evidence to support some of the reasons on which her disparate treatment claim is based, we need not address any other grounds. We are unable to reverse and render judgment in favor of Harris County on this claim, however, because the evidence was at least sufficient to permit a reasonable jury to find that, based on Rutherford's sex, Corporal Hartley subjected her to disparate treatment in the form of unfounded criticism of her accident reports.

[13]Rutherford's failure to promote claim is unaffected because the jury made liability, damages, and front pay findings that pertained solely to that claim.

of employment[.]"  The court did not instruct the jury to address each individual basis for Rutherford's disparate treatment claim. In this respect, Interrogatory No. 3 was akin to a general verdict.

"[W]hen a case is submitted to the jury on a general verdict, the failure of evidence or a legal mistake under one theory of the case generally requires reversal for a new trial because the reviewing court cannot determine whether the jury based its verdict on a sound or unsound theory."  *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 271 (5th Cir. 1989) (quoting *Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1123 (5th Cir. 1988)).  "The result is different, however, when the reviewing court can be 'reasonably certain that the jury did not base its verdict on an unsound theory.'"  *Id.* (quoting *Braun v. Flynt*, 731 F.2d 1205, 1206 (5th Cir. 1984)). "[I]f any one of the district court's list of claims were not supported by evidence or in some other way unsound, we would be bound to remand this cause for a new trial, absent evidence that the jury did not base its verdict on that unsound claim."  *Id.*

We cannot be reasonably certain the jury did not base its verdict on an unsound theory because the district court asked the jury generally whether Harris County had intentionally discriminated against Rutherford based on her sex by treating her less favorably than male employees with respect to unspecified "terms, conditions or privileges of employment."  We therefore

reverse the part of the judgment that awards Rutherford $50,000 for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life on her disparate treatment claim and remand for a new trial of that cause of action.[14]

---

[14]In view of this ruling, we need not address Harris County's fourth and fifth arguments on appeal, both of which complain of parts of the jury charge (one instruction and two interrogatories) that pertain solely to Rutherford's disparate treatment claim.

Harris County next complains of two evidentiary rulings: the district court's decision to permit Rutherford to introduce evidence that Sgt. Wells had requested that she have sexual relations with him, and its ruling refusing to permit Harris County to introduce evidence of the reasons it terminated Deputy Walker and of the nondiscriminatory reasons why her supervisors took other actions. We review these decisions for abuse of discretion. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1220 (5th Cir. 1995).

A

Harris County complains that the district court abused its discretion by permitting Rutherford to introduce evidence that Sgt. Wells had asked her to have sexual relations with him. It argues that in Rutherford's Equal Employment Opportunity Commission ("EEOC") charge, and in her affidavit in support of her separate EEOC retaliation charge, she referred to sex discrimination, not sexual harassment. Harris County points out that the district court granted summary judgment before trial because Rutherford had not exhausted her administrative remedies with respect to any sexual harassment claims. It maintains that the court abused its discretion in overruling its objection because the evidence exceeded the scope of Rutherford's EEOC charges and was irrelevant in a case where the sexual harassment claim had been dismissed before trial. Harris County argues that the court's ruling

prejudiced it severely.

The district court did not abuse its discretion in allowing Rutherford to offer proof that Sgt. Wells had asked her to have sexual relations with him. Evidence concerning a claim that is not on trial because it exceeds the scope of the plaintiff's EEOC charge does not automatically lose its relevance or probative value to a claim that remains. *Cf. United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (holding that untimely charges may still constitute relevant background evidence in proceeding in which current practice is at issue); *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199-200 (5th Cir. 1992) (same). Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Rutherford introduced proof of Sgt. Wells' conduct in order to prove discriminatory intent. At a minimum, the evidence was relevant to Rutherford's attempt to refute Harris County's contention that it opted not to promote her to the full-time deputy position because she had made numerous, severe errors in accident reports. Rutherford sought to demonstrate that Corporal Hartley began closely scrutinizing and heavily criticizing her work only after his superior—Sgt. Wells—requested unsuccessfully that Rutherford have sexual relations with him. Moreover, in January 1995, before being rebuffed, Sgt. Wells gave Rutherford high marks

concerning her written work.  In September 1995, after she had spurned Sgt. Wells' overtures, Corporal Hartley downgraded her severely.  The district court did not abuse its discretion in admitting this evidence.

B

Harris County also maintains that the district court abused its discretion by refusing to permit Harris County to present the reasons for terminating Deputy Walker and the nondiscriminatory justifications for other actions of supervisors.  It argues that Rutherford elicited testimony from Deputy Walker concerning her indefinite suspension from the Precinct 7 Traffic Safety Division to demonstrate that females in the Precinct were treated differently from their male counterparts.  Deputy Walker testified that she had been suspended for disorderly conduct for scratching her husband's car during a time when they were going through a divorce.  Deputy Walker was required to write a report about the incident and was indefinitely suspended.  She testified that she later learned that her personal information had been disseminated throughout the Precinct office.  Harris County complains that the district court improperly restricted cross-examination concerning Deputy Walker's conduct during the car-scratching incident so the jury was left with the misimpression that she had been wrongfully terminated.  It argues that it should have been allowed to elicit evidence during its cross-examination of Deputy Walker that showed that her conduct made it necessary to investigate whether she had

committed an act of criminal mischief. Harris County maintains that Rutherford aggravated the adverse impact of the court's rulings by asserting in closing argument that "what happened to [Deputy] Walker is just absolutely atrocious" and that "[w]hen [Deputy Walker] was ready to move into the full-time position, she got fired. Same thing happened to [Rutherford]." Harris County argues that this error affected its substantial right to a fair trial.

We will assume *arguendo* that the district court abused its discretion in restricting Harris County's cross-examination of Deputy Walker. For the error to be reversible, however, Harris County must establish that it suffered substantial prejudice. *Mooney*, 54 F.3d at 1220. We conclude from our review of the record that any error in this ruling did not substantially prejudice Harris County.

First, we have reviewed Harris County's proffer and compared it with the evidence that was in fact introduced. We conclude that the differences are not so qualitatively significant that we can confidently discern any adverse effect on Harris County's substantial rights. The evidence included in Harris County's proffer concerned the details of the car-scratching incident, the investigation of a possible charge of criminal mischief that Corporal Francis conducted at the request of the Houston Police Department ("HPD"), and Harris County's contentions that the

incident became public knowledge at the Precinct because HPD had summoned Corporal Francis to the scene, that Deputy Walker was suspended for conduct unbecoming an officer, and that following a conditional review for reinstatement, Deputy Walker admitted that she had been in the wrong and was terminated. Even under the district court's ruling, however, the parties elicited evidence that Chief Tippitt suspended Deputy Walker indefinitely because she had engaged in disorderly conduct by scratching her husband's car, and that Deputy Walker agreed with Chief Tippitt that she should not have gone to her husband's apartment complex and vandalized his vehicle. The district court found, and we agree, that there was "enough evidence in the record for [Harris County] to argue [to the jury] that [Deputy Walker] was not willy-nilly terminated."

Second, when we view this evidence in the context of the entire record, as we must, *see Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 547 (5th Cir. 1996), and assess it as it relates to Rutherford's failure to promote claim, which is the only relevant context in light of our ruling that Harris County is entitled to a new trial of the disparate treatment claim, we are unable to say that the ruling excluding the evidence caused Harris County substantial prejudice. The focus of the promotion claim was Rutherford's proof that she was more qualified than was Green and that Harris County's articulated reasons for not promoting her were pretextual.

- 27 -

We decline to reverse the verdict based on the district court's evidentiary rulings.

IV

Harris County asserts that the district court abused its discretion in awarding Rutherford front pay of $125,000[15] because she testified that she felt reinstatement was feasible and in fact requested this relief, and there was no evidence that reinstatement was not feasible. It complains that the district court did not articulate any basis for its decision to award front pay.

Although the district court asked the jury to make findings concerning the amount of front pay, it recognized that it retained the discretion not to award this relief even if the jury granted future damages. During the charge conference it stated that "the door is not closed on the question of whether or not reinstatement is an appropriate remedy versus damages." The district judge "reserve[d] the right to make that determination at the appropriate time." Although the parties tried this case before our decision in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), the district court essentially anticipated our holding that front pay is an equitable remedy for the district court to determine, with

_____

[15]The district court awarded Rutherford $175,001.00 in "Damages" in its May 13, 1998 judgment and the same amount as "Damages (Front Pay—Jury Award)" in its August 17, 1998 judgment. The sum of $125,000 to which Harris County refers consists of $100,000 for lost future wages and $25,000 for lost future benefits that the jury awarded on her failure to promote claim.

the assistance of an advisory jury if it wishes. *Id*. at 423 n.19.

The dispositive question on appeal, however, is whether the district court adequately explained why it awarded front pay. We hold that it did not. "Front pay is awarded to compensate the plaintiff for lost future wages and benefits." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992). We have recognized that "[a]lthough reinstatement is the preferred remedy for a discriminatory discharge, front pay may be awarded if reinstatement is not feasible." *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 257 (5th Cir. 1996) (age discrimination discharge case). We review the district court's decision to award front pay only for abuse of discretion. *Id.* "On appeal, we look to the record to determine why the district court considered reinstatement infeasible." *Weaver v. Amoco Prod. Co.*, 66 F.3d 85, 88 (5th Cir. 1995) (citing *Walther v. Lone Star Gas Co.,* 952 F.2d 119, 127 (5th Cir. 1992)). We require that the district court adequately articulate its reasons for finding reinstatement to be infeasible and for awarding front pay instead. *See id.* at 89.

Rutherford asserted at oral argument that the district court had implicitly found that an award of front pay was appropriate. She cites in her brief several reasons for this contention, positing that each is supported by the evidence, and that the

district court was aware of each such ground.[16]  Regardless whether the district court had a basis to award front pay, it did not adequately articulate its findings.  Rutherford has cited no place in the record, and we have found none, where the district court set out its reasoning.  We must therefore vacate the front pay award and remand for further proceedings on this issue.

In doing so, we note the potential misapplication of the term "reinstatement" in this case.  We raise this issue ourselves because it may impact the district court's resolution of the front pay question.  Harris County and Rutherford join issue over whether the district court should have ordered reinstatement rather than front pay.  But this is a *promotion* case, not a *discharge* case.  Thus when the parties refer to the remedy of "reinstatement," they perforce mean an order directing that Rutherford be promoted to full-time deputy constable, not that she be restored to the position of STEP deputy constable.  In the present case, this is more than a question of semantics.

First, "reinstatement" in a promotion case may involve considerations that are not present in a discharge case.  *Cf. Zerilli v. New York City Transit Auth.*, 973 F. Supp. 311, 317-18 (E.D. N.Y. 1997) (addressing whether successful Title VII plaintiff who was denied promotion should be granted prospective relief in

_____

[16]Rutherford also asserted during oral argument that the jury had by its verdict made the required findings.  We reject this contention.

form of promotion or front pay).  Second, the evidence that Harris County cites to contend that even Rutherford felt she could be reinstated (and that she requested reinstatement), *see* Appellant Br. at 25, may not in fact support this assertion.  Rutherford testified:

> Q. Did you feel or do you feel that, if the judge should order it, that the [sic] that you would be able to go back to doing your deputy's duties at Precinct 7; in other words, do you feel like you could be reinstated there and get back to being in law enforcement?
>
> A. Yes.
>
> Q. Would you request that you be allowed to do that if it would be found to be appropriate?
>
> A. Yes.

Tr. II:156-57.  This evidence does not explicitly address whether Rutherford was addressing *reinstatement* to her former deputy position or *promotion* to the job she was denied.  We leave to the district court on remand, of course, the determination of how the evidence should be assessed, subject to review of its final front pay decision only for abuse of discretion.

Absent the required findings, we vacate the award of front pay and remand the issue to the district court for further proceedings.

V

We next address the district court's award of back pay and prejudgment interest.  In its original judgment, entered May 13, 1998, the district court made no such award.  On July 8, 1998

- 31 -

Rutherford filed a Rule 60 motion for relief from judgment. Later that day, Harris County filed its notice of appeal. The district court granted Rutherford's motion and entered on August 17, 1998 a new judgment that provided for back pay of $74,900 and prejudgment interest thereon.

A

Harris County contends the district court lacked jurisdiction to award back pay and prejudgment interest after Harris County had already filed its notice of appeal. It argues that even if the district court had obtained leave of this court to grant Rutherford's motion for relief from judgment, it would have abused its discretion in doing so because, when it issued its May 13, 1998 findings of fact and conclusions of law, it made no findings that Rutherford was entitled to back pay in any amount or to prejudgment interest. Harris County also posits that the district court abused its discretion in awarding back pay because Rutherford failed to mitigate her damages. It asserts that when she did not receive the promotion to full-time deputy, she requested that she be transferred to the reserve system, an unpaid position, instead of remaining as a part-time deputy.

Rutherford contends that the district court had jurisdiction, that she filed her Rule 60 motion for relief from judgment before Harris County filed its notice of appeal, that the cases on which Harris County relies are distinguishable, and that, alternatively, the district court could have awarded relief based on Rule 60(a)

because its error in not doing so was clerical.  Rutherford
maintains that Harris County did not demonstrate compelling
circumstances sufficient to deny back pay, that the award is
supported by substantial evidence, and that Harris County did not
meet its burden of demonstrating failure to mitigate.  Rutherford
also asserts that the district court properly awarded prejudgment
interest.

B

Because we are considering an issue of the district court's
subject matter jurisdiction, our review is plenary.  *Taylor-
Callahan-Coleman Counties Dist. Adult Probation Dep't v. Dole*, 948
F.2d 953, 956 (5th Cir. 1991).  We agree with Harris County that
the district court lacked jurisdiction to grant Rutherford's motion
for relief from judgment.[17]  Harris County filed its notice of
appeal before the district court entered its August 17, 1998
judgment, which for the first time contained recoveries of back pay
and prejudgment interest.  A district court loses all jurisdiction
over matters brought to the court of appeals upon the filing of a
notice of appeal.  *Winchester v. United States Attorney for S.
Dist. of Tex.*, 68 F.3d 947, 948 (5th Cir. 1995) (voiding judgment

---

[17]We recognize that an appeal from an unappealable order does
not divest a district court of subject matter jurisdiction.  *See
United States v. Hitchmon*, 602 F.2d 689, 690-91 (5th Cir. 1979) (en
banc) (holding that appeal from unappealable order does not divest
district court of jurisdiction during period that appeal is pending
in circuit court).  The judgment in question, however, was
undisputably appealable.

where Rule 60(b) motion was filed, then notice of appeal was filed, and court later granted judgment based on Rule 60(b) motion, holding that filing of notice of appeal divested district court of jurisdiction); *Henry v. Independent Am. Sav. Ass'n*, 857 F.2d 995, 997-98 & n.10 (5th Cir. 1988). Once "an appeal is taken, the district court is divested of jurisdiction except to take action in aid of the appeal until the case is remanded to it by the appellate court, or to correct clerical errors under Rule 60(a)." *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1407 n.3 (5th Cir. 1994). "Without obtaining leave, the district court is without jurisdiction, and cannot grant the [Rule 60(b)] motion." *Winchester*, 68 F.3d at 949 (emphasis deleted) (quoting *Travelers Ins.*, 38 F.3d at 1407 n.3). It is irrelevant that Rutherford filed her motion at an earlier point in the day on July 8, 1998 than Harris County filed its notice of appeal. Once the notice was filed, the district court lost jurisdiction with respect to any matters involved in the appeal. *See id.* (holding that district court lacked jurisdiction on May 5, 1994 to grant Rule 60(b) motion filed March 30, 1994, where movant had filed notice of appeal on April 26, 1994, between date that it filed Rule 60(b) motion and date that district court granted motion).

Nor can we uphold the district court's action based on Rule 60(a). Rule 60(a) is available only when a mistake is clerical in nature. *See Jones v. Anderson-Tully Co.*, 722 F.2d 211, 212 (5th

Cir. 1984) (per curiam). When it entered its findings of fact and conclusions of law on May 13, 1998, the district court made no findings that Rutherford was entitled to back pay in any amount or that she was entitled to prejudgment interest. The failure of the district court to make findings and to award back pay or prejudgment interest was not clerical in nature because correction of an error in substantive judgment is outside the reach of Rule 60(a). *In re West Texas Marketing Corp.*, 12 F.3d 497, 503 (5th Cir. 1994). We find that *Chavez v. Balesh*, 704 F.2d 774, 776 (5th Cir. 1983), which Rutherford characterized at oral argument as being "almost identical" with the instant case, does not assist her. In *Chavez* we held that the district court's failure to award liquidated damages was correctable as a clerical oversight where the district court had clearly expressed its intention to award liquidated damages in findings of fact signed and entered the same day as its judgment, and the original judgment itself began by reciting that it was being entered in accordance with the court's findings of fact and conclusions of law.

Accordingly, because the district court lacked jurisdiction to grant such relief, we vacate the award of back pay. It follows that because the award of prejudgment interest is based solely on the recovery of back pay, we must vacate that part of the judgment as well.

On remand the district court will again have jurisdiction and may decide to award back pay. We will therefore address Harris County's argument that Rutherford failed to mitigate her damages.

Harris County maintains that when Rutherford did not receive the full-time deputy position, she requested a transfer back to the regular reserve system, an unpaid job, and Harris County terminated her as a reserve deputy when she failed to attend mandatory meetings. Harris County argues that Rutherford could have mitigated her damages by remaining in her current position.

A Title VII plaintiff has a statutory duty to mitigate her damages. *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990). The district court did not enter findings of fact concerning back pay or, specifically, the mitigation defense, which the parties listed in the joint pretrial order as a contested issue of fact, and Harris County argued in its response to Rutherford's post-verdict motion for entry of judgment. From our review of the record, it appears the district court adopted in part the back pay calculation that Rutherford set out in her motion for judgment.[18] If on remand the district court decides to award back pay, it must either deduct the amount (if any) that Rutherford could reasonably have mitigated—determined according to the applicable burden of

_____

[18]Rutherford requested $74,900 in lost wages and benefits and $38,305.20 for the lost opportunity to work a STEP contract as an extra job. The district court awarded her $74,900.

proof and legal standards——or award the full amount and enter supporting findings for doing so.

Moreover, it also appears that the back pay that Rutherford requested, and that the district court awarded, overstates the amount to which she is entitled.[19]  "'Back pay' commonly refers to the wages and other benefits that an employee would have earned if the unlawful event that affected the employee's job related compensation had not occurred."  *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936 n.8 (5th Cir. 1996).  Because this is a promotion case, Rutherford's lost back pay equals the additional incremental wages and employment benefits that she would have received had she been promoted.  *See Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1449 (9th Cir. 1990) (holding that district court did not err in awarding back pay based on computation of difference between what plaintiff earned as shipping assistant and what she would have earned had she received shipping supervisor promotion, calculated from time promotion was given to another person to date of judgment); *cf. Bennun v. Rutgers St. Univ.*, 941

---

[19]We have compared the front pay that Rutherford requested in closing argument with the jury's advisory findings.  Although we are unable to conclude that the findings suffer from an infirmity that is similar to the one we now address (for one thing, they represent sums that have been reduced to present value in accordance with the jury instructions), we note that the district court is free on remand to calculate front pay based on its own assessment of the evidence.  *See Enserch Corp. v. Shand Morahan & Co.,* 952 F.2d 1485, 1502 (5th Cir. 1992) (holding that court is free to disregard findings of advisory jury).

F.2d 154, 157 (3d Cir. 1991) (referring to judgment in Title VII action in which district court awarded associate professor, who was denied promotion to full professor, back pay that amounted to difference between his earnings as associate professor and what he should have been paid as full professor). In Rutherford's motion for entry of judgment and her requested findings of fact and conclusions of law, however, she simply multiplied Green's entire monthly salary of $2,375.00, and benefits of $300 per month, by the number of months that elapsed between the date she would have started the full-time deputy job and the month before trial began. She did not limit her request to the difference between the wages and benefits that she would have received had Harris County promoted her and those that she earned in the position she held when denied the promotion.[20]

---

[20]As we have noted, after Harris County declined to promote her, Rutherford requested a transfer to reserve deputy status. Harris County discharged her when she failed to attend mandatory meetings. Although Rutherford testified at trial that she resigned as a STEP deputy and returned to reserve status because Corporal Hartley (whom she considered her main tormentor) had become a sergeant, and that her subsequent termination from reserve status for absenteeism was an act of retaliation, the district court granted summary judgment dismissing these claims. She did not appeal either ruling. We see no basis for her to recover back pay in an amount greater than the difference in wages and benefits between the two positions.

Moreover, there is another reason in the trial record to question Rutherford's approach to the issue of back pay. Rutherford testified that as a part-time deputy constable, she earned approximately $704.00 per week (32 hours multiplied by approximately $22.00 per hour). Green testified that as a full-time deputy constable, he was paid $2,375.00 per month plus benefits. Chief Tippitt testified that the monthly benefits for a full-time deputy constable equaled approximately $300 in value.

Assuming that Rutherford worked four weeks per month, it would appear, according to the trial evidence, that her monthly pay and benefits as a part-time deputy ($704.00 x 4=$2,816) actually *exceeded* what Green was paid as a full-time deputy ($2,375.00 + $300=$2,675.00).

VI

Finally, in related arguments, Harris County challenges the district court's attorney's fee award.[21] It contends the district court abused its discretion by enhancing the lodestar and that it made clearly erroneous findings of fact and conclusions of law in doing so. "We review a district court's award of attorney's fees for an abuse of discretion, and we accept the factual findings upon which the district court bases its award of attorney's fees, including the determination of the number of hours reasonably expended on the litigation, unless they are clearly erroneous[.]" *Brady v. Fort Bend County*, 145 F.3d 691, 716 (5th Cir. 1998) (citations omitted), *cert. denied*, ___ U.S. ___, 119 S.Ct. 873 (1999).

A

Harris County posits that the district court abused its discretion by enhancing the lodestar attorney's fee by a multiplier of 1.5 on the ground that Rutherford's attorneys had accepted the case on a contingent fee basis. Rutherford argues that the trial court properly enhanced her attorney's fees award based on detailed findings supported by specific evidence under the proper factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.

---

[21]As we explain *infra* at § VI(B), to the extent that Harris County relies on this argument to challenge any part of the district court's judgment except the attorney's fee award, we hold that it is not properly briefed.

1974).  She appears to contend that the district court enhanced the lodestar on permissible grounds.[22]

To decide an appropriate attorney's fee award, the district court was first required to calculate a lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *League of United Latin Am. Citizens #4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). The court was next obligated to consider whether the lodestar amount should be adjusted upward or downward, depending on the circumstances of the case and after addressing the *Johnson* factors.[23]  *See Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997).

The district court calculated the lodestar amount by multiplying 511.2 hours (which it found was the number of hours

---

[22]At oral argument, Rutherford stated her position more explicitly, asserting that the district judge "did not assign that particular factor [that the fee was contingent] as the reason for enhancement.  Now, he did consider it along with the others."  As we explain below, this assertion does not withstand scrutiny.

[23]These familiar factors are (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases. *Johnson*, 488 F.2d at 717-19.

reasonably expended) by $187.50 (which it found was the reasonable hourly rate). The court enhanced the lodestar upward to $148,775.00 by multiplying it by a factor of 1.5 and adding $5,000 incurred litigating the fee application. Harris County does not challenge in any specific respect the calculation of the lodestar fee. Instead, it focuses only on the enhancement.

We hold that the district court based the 1.5 multiplier enhancement entirely on *Johnson* factor 6, because the only mention of augmenting Rutherford's attorney's fees on this basis is contained in the section of the district court's findings entitled, "Whether the Fee is Fixed or Contingent." In that part of its findings and conclusions, the district court stated: "Accordingly, it is appropriate to enhance the plaintiff's attorney's fees by the multiplier of 1.5 sought." (citation omitted). We hold that the district court abused its discretion because the Supreme Court has barred any use of this factor. *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) (citing *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992)); *see Shipes v. Trinity Indus.*, 987 F.2d 311, 323 (5th Cir. 1993) ("[F]ollowing the clearly lighted path of *Burlington*, we now hold that the contingent nature of the case cannot serve as a basis for enhancement of attorneys' fees awarded to prevailing plaintiffs under traditional fee-shifting provisions."). Although the district court explicitly discussed *Johnson* factors 1, 2, 5, 6, 8, 10, and 12, we find

- 42 -

nothing in the record to support Rutherford's contention that the court based the enhancement on one or more permissible factors.

Accordingly, we vacate and remand the attorney's fee award so that the district court can reconsider what award should be made without taking into account whether the fee was fixed or contingent.

B

Harris County argues the district court erred by making clearly erroneous findings of fact and conclusions of law that were not supported either by the pleadings or the evidence. It maintains that "none of these findings should have been considered in computing or enhancing the lodestar attorney's fee or for any other purpose." Appellant Br. at 31.

If Harris County intends by this argument to challenge any relief that the district court granted other than attorney's fees, we find that its oblique reference to "any other purpose" is inadequate to brief the issue. Because we will not consider an issue that is inadequately briefed, *see Dardar v. Lafourche Realty Co.*, 985 F.2d 824, 831 (5th Cir. 1993) (holding that "[q]uestions posed for appellate review but inadequately briefed are considered abandoned."), we do not address this contention.[24]

---

[24]Harris County elsewhere asserts that because certain of the findings are unsupported in the record, "there was no basis for the injunctive relief ordered by the court." Appellant Br. at 30. We hold that this conclusory assertion is not adequately briefed and we decline to consider it.

Harris County contends the following findings are clearly erroneous and should not have been considered in computing or enhancing the lodestar attorney's fee: (1) other females, including Deputy Walker, were discriminated against in that they were skipped for a promotion or otherwise retaliated against for engaging in protected activity under Title VII; (2) inappropriate documents were placed in Rutherford's personnel file, causing damage to her, and Harris County has hindered her ability to obtain law enforcement employment; (3) Harris County engaged in blatant efforts to influence the testimony of witnesses through terminations and reprimands; (4) Harris County had an inadequate "no harassment policy" and the policy was not implemented until after Rutherford had been terminated; (5) the testimony demonstrated the need for county-wide Title VII injunctions; and (6) there was a pattern in Precinct 7 of enticing women to apply for "reserve" or voluntary work, subjecting them to on-the-job, psychologically damaging sex discrimination, terminating those who opposed sex discrimination, and refusing to allow women to advance into supervisory positions.

Even if we assume *arguendo* that these findings are clearly erroneous, we can discern no impact that they had on the calculation of the attorney's fee award. The discussions of discrimination against other females, including Deputy Walker, and placement of inappropriate documents in Rutherford's file, were not

included in the district court's discussion of the lodestar or any particular *Johnson* factor. Therefore, any erroneous findings are harmless in the context of the fee award, which is the only relevant one. The findings regarding influencing testimony, inadequate anti-harassment policy, and the need for county-wide injunctions were merely three of several reasons on which the district court relied to find that Rutherford's counsel reasonably expended 511.2 hours in legal services. But, as we have noted, Harris County does not argue on appeal that the time expended was unreasonable. Because these findings were considered only to determine the lodestar, not to enhance the fee, any error is harmless. The district court relied on the finding of a discriminatory pattern in analyzing the eighth *Johnson* factor—the amount involved and results obtained. We find no indication that the district court calculated the lodestar, or enhanced the fee award, based on this factor. Harris County has failed to establish that any one or more of these findings, even if clearly erroneous, provide a basis for reversal.

Accordingly, we vacate the fee award and remand that issue to the district court for further proceedings.[25]

---

[25]We acknowledge that we could affirm the fee award without the multiplier if we were not also vacating the judgment concerning Rutherford's disparate treatment claim. Because that decision may impact what the district court determines is a reasonable fee, however, we cannot modify the fee award and affirm it on that basis.

     *     *     *

In sum, we affirm the verdict and judgment as to Harris County's liability under Title VII for failing to promote Rutherford to the position of full-time deputy; reverse and remand for a new trial Rutherford's disparate treatment claim; and vacate and remand for further proceedings the awards of front pay, back pay, prejudgment interest, and attorney's fees.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART, AND VACATED AND REMANDED IN PART.