# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-40791
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
February 11, 2014

Lyle W. Cayce
Clerk

DEBRA ELLEN COHEN,

Plaintiff–Appellant

v.

UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER; UNIVERSITY OF
TEXAS HEALTH SCIENCE CENTER AT TYLER; CENTER FOR
CLINICAL RESEARCH,

Defendants–Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:11-CV-650

Before KING, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Debra Ellen Cohen brought discrimination and
retaliation claims under § 504(a) of the Rehabilitation Act of 1973, 29 U.S.C.
§ 794(a), against her former employer, Defendant-Appellee the University of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 13-40791

Texas Health Science Center at Tyler.[1]   With the consent of the parties, Cohen's suit was transferred to a magistrate judge in accordance with 28 U.S.C. § 636, who granted summary judgment in Defendant-Appellee's favor. Cohen appeals from the magistrate judge's decision.  For the following reasons, we affirm the magistrate judge's grant of summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A.    Factual Background

Plaintiff-Appellant Debra Ellen Cohen was diagnosed with rheumatoid arthritis sometime between 1993 and 1995.  In August 2009 she was hired as a "clinical data specialist" for the Clinical Research Center ("CRC") of the University of Texas Health Science Center at Tyler ("UTHSC").  Cohen's position involved testing the functionality of a clinical trial management program called "StudyManager."  StudyManager was designed to increase CRC's efficiency by allowing CRC's systems to communicate with each other, reducing the need to manually enter and extract data from one system to another.  In her position, Cohen also assisted with the use of Microsoft Office products, web management, and data entry.

After working with StudyManager, Cohen discovered the program had data integrity issues and was unsuited to CRC's needs.  Cohen recommended rejecting the StudyManager contract, and CRC thereafter shut down implementation of the program.  CRC then began considering competing contracts for similar computer programs, including one called "Velos." Because of state-ordered budget cuts, UTHSC decided to forgo use of a program like

---

[1] Although Cohen originally brought suit against additional defendants, Cohen states that at a scheduling conference held on June 18, 2012, she informed the court that she was dismissing her suit as to all defendants except the University of Texas Health Science Center at Tyler.

StudyManager or Velos, and instead continued using the systems it had in place.

Cohen began experiencing work-related difficulties in early 2010, while CRC director Laurie Macleod, her direct supervisor, was on medical leave. When Macleod returned to work in March 2010, Cohen informed Macleod that she had been involved in a car accident. Cohen told Macleod that she was experiencing a great deal of pain, had limited use of her hands, and would need surgery on both her hands. Nevertheless, Cohen stated that she did not intend to seek disability benefits and that she could perform her job. Despite Cohen's assurances, Macleod approached the Human Resources department to learn how to ask Cohen about what kinds of accommodation Cohen would require. With Cohen's permission, Macleod had Cohen's workstation evaluated to improve Cohen's productivity, and an adaptive keyboard was purchased for Cohen.

Cohen underwent surgery on March 31, 2010. She returned to work on April 5, 2010, but struggled to perform her work functions. Macleod repeatedly insisted that Cohen go home and not return until Cohen's physician provided a work release. Ignoring Macleod's instruction, Cohen attempted to return to work several times without the proper documentation. Cohen eventually returned to work on April 14, 2010, with a note from her doctor stating that she could return on modified duty.

At some point, Macleod suggested that voice-recognition software might assist Cohen in her data-entry and related duties. Cohen submitted such a request on April 23, 2010. Macleod informed Cohen that Macleod would need to meet with Georgia Melton, UTHSC's Human Resources director, before purchasing the voice-recognition software.

In May, Melton provided Cohen with a permanent ADA accommodations request form. Cohen, however, insisted that she required only temporary

accommodations.  On May 11, 2010, Cohen met with Macleod and Melton to discuss the fact that Cohen had not turned in an ADA accommodation form. On May 19, 2010, Cohen presented a doctor's note requesting accommodations and/or restrictions until August 10, 2010.  At that time, Macleod informed Cohen that she had requested an analysis of the feasibility of Cohen using voice-recognition software and that the IT department had said that such a program would not interface with existing systems, would cost $1,500 per license, and was effective primarily for transcription.  Cohen responded that she no longer needed the voice-recognition software.

Cohen met with Macleod and Melton on June 1, 2010, at which time Macleod informed Melton that there was not enough work for Cohen following UTHSC's decision not to pursue clinical trial management programs like StudyManager.  Cohen then was informed that her employment was being terminated.  However, it appears that Cohen was not immediately removed from the payroll or from Macleod's supervision.  Melton informed Cohen about a potential part-time position in the IT department.  Cohen began working in the IT department on June 23, 2010.  Her employment in that position ended on August 3, 2010.  UTHSC's discharge letter explained that Cohen's termination was part of a reduction in force ("RIF"), and that the clinical data specialist position was being eliminated.

B.     Procedural Background

Cohen filed her original complaint on December 5, 2011, alleging five claims under the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. §§ 12101, *et seq.*, as amended by the ADA Amendments Act of 2008.  On January 11, 2012, Cohen filed an amended complaint, again asserting claims under the ADA, but adding five claims for discrimination and retaliation under § 504(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).  Cohen's claims under the Rehabilitation Act alleged that UTHSC failed to accommodate her

No. 13-40791

rheumatoid arthritis, discriminated against her by demoting and discharging her, and retaliated against her for requesting the use of voice-recognition software.

On May 24, 2012, with the parties' consent, the case was transferred to a magistrate judge pursuant to 28 U.S.C. § 636.[2]  At a scheduling conference held in June 2012, Cohen advised the court that she was dismissing all defendants except UTHSC.  UTHSC filed a motion to dismiss Cohen's ADA claims for lack of subject-matter jurisdiction, which the district court granted on October 31, 2012.  UTHSC followed the district court's dismissal of Cohen's ADA claims with a motion for summary judgment as to Cohen's remaining claims for discrimination and retaliation under § 504(a) of the Rehabilitation Act.  The district court granted UTHSC's motion on March 25, 2013, and entered final judgment dismissing Cohen's suit the same day.

Cohen subsequently moved for reconsideration under Federal Rule of Civil Procedure 59, and for leave to supplement her motion for reconsideration. The district court denied both motions.

Cohen timely filed a notice of appeal on July 23, 2013.

## II. STANDARD OF REVIEW

This court reviews de novo a district court's order granting a defendant's motion for summary judgment and applies the same standard as did the district court.  *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163 (5th Cir. 2006).  "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 561 (5th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).  We view the

---

[2] Because the parties consented to the magistrate judge's adjudication, we will refer to the magistrate judge's rulings as being those of the district court.

No. 13-40791

evidence in the light most favorable to the nonmovant. *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006).

## III. DISCUSSION

On appeal, Cohen argues that the district court erred in dismissing her claims for discrimination and retaliation under the Rehabilitation Act. The Rehabilitation Act "prohibits discrimination on the basis of disability by recipients of federal funds." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 614 n.5 (5th Cir. 2009). Similarly, "[t]he Rehabilitation Act prohibits retaliation against individuals who have opposed discriminatory employment practices or made charges of discrimination." *Shannon v. Henderson*, 275 F.3d 42, 2001 WL 1223633, at *3 (5th Cir. 2001) (table decision) (citing 29 C.F.R. § 1614.101 (2000)). We previously have held that we jointly interpret the ADA and the Rehabilitation Act. *See Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011); *Hainz v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) ("Jurisprudence interpreting either section is applicable to both."). Consequently, where, as here, a plaintiff relies on circumstantial evidence in support of her retaliation and discrimination claims under the Rehabilitation Act, we apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] *See McInnis v. Alamo Cmty. Coll. Dist.*,

---

[3] Cohen argues that the district court incorrectly applied *McDonnell Douglas* to her failure-to-accommodate claim. *See, e.g.*, *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004) ("Reasonable accommodation claims are not evaluated under the *McDonnell Douglas* burden-shifting analysis."); *cf. Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (discussing elements of failure-to-accommodate claim). However, in raising this argument, Cohen does not dispute that she withdrew her request for voice-recognition software when she regained the use of both her hands, or rebut any of UTHSC's evidence that the voice-recognition software would not interface with the systems she used or that it would be costly in relation to its usefulness to her job functions. *See Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005) (court may affirm a district court's decision on any grounds supported by the record). Furthermore, it does not appear that Cohen opposed UTHSC's application of the framework in its summary judgment motion until her motion for reconsideration. *See Lincoln Gen. Ins. Co. v. De La Luz Garcia*, 501 F.3d 436,

No. 13-40791

207 F.3d 276, 279 (5th Cir. 2000); *see also Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 F. App'x 364, 368 & n.6 (5th Cir. 2012).[4]

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination or retaliation. To show discrimination under the Rehabilitation Act, "a plaintiff must prove (1) [she] is an individual with a disability; (2) who is otherwise qualified [for the position sought]; (3) who worked for a program or activity receiving Federal financial assistance; and (4) that [she] was discriminated against solely by reason of her . . . disability." *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (second alteration in original) (quoting *Hileman v. City of Dall., Tex.*, 115 F.3d 352, 353 (5th Cir. 1997)) (internal quotation marks omitted). To demonstrate unlawful retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal connection existed between the protected act and the adverse action.[5]  *See Seaman v.*

---

442 (5th Cir. 2007) (court generally will not consider issue raised for the first time in a motion for reconsideration).

[4] Although there are no published decisions in this circuit expressly holding that *McDonnell Douglas* applies to claims brought under the Rehabilitation Act, numerous unpublished decisions have favorably cited out-of-circuit authority for its application. *See, e.g.*, *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 400 n.4 (5th Cir. 2012) (discrimination); *Shannon*, 2001 WL 1223633, at *3 & n.6 (retaliation).

[5] Cohen argues that her retaliation claims should not have been dismissed because UTHSC did not disclose the grounds on which it sought summary judgment as to those claims. She further argues that the district court did not provide sufficient notice that it would consider dismissing her retaliation claims *sua sponte*. "[S]ummary judgment is improper if [t]here was no reason for the [nonmoving party] to suspect that the court was about to rule on the motion." *Atkins v. Salazar*, 677 F.3d 667, 678 (5th Cir. 2011) (second and third alterations in original) (internal quotation marks and citation omitted). "[D]istrict courts may not grant summary judgment *sua sponte* on grounds not requested by the moving party." *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 632 (5th Cir. 2004) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(f) (court may grant summary judgment on grounds not raised by a party after giving notice and a reasonable time to respond). Because UTHSC argued below that Cohen's position was eliminated due to a RIF, we conclude that Cohen had sufficient notice to respond and, in fact, did.

*CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999); *see also Calderon v. Potter*, 113 F. App'x 586, 592 & n.1 (5th Cir. 2004).

If a plaintiff can satisfy the prima facie elements, the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for its actions. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the defendant meets his burden and presents such a reason, then the burden shifts back to the plaintiff to show that the nondiscriminatory justification was mere pretext for discrimination or retaliation.[6] *Seaman*, 179 F.3d at 300–01.

Assuming *arguendo* that Cohen can meet her prima facie burden as to both her retaliation and discrimination claims, we focus our analysis on the second and third steps of the *McDonnell Douglas* analysis. Like the district court, we find that, in arguing that her employment was part of a RIF, UTHSC has articulated a legitimate nondiscriminatory reason for its decision. *See E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). We therefore consider whether Cohen can show that UTHSC's purported reason was pretext.

The district court concluded that Cohen could not show pretext. As to her discrimination claims, the district court held that she had "not met her burden of producing sufficient evidence from which a reasonable trier of fact could conclude that [UTHSC's] proffered reason [was] unworthy of credence." Likewise, as to her retaliation claims, the district court found that "the summary judgment evidence does not show that the termination of [Cohen's] employment would not have occurred but for her request for voice recognition

---

[6] In the context of retaliation claims brought under the Rehabilitation Act, a plaintiff demonstrates pretext where she "show[s] that the adverse action would not have occurred 'but for' the protected activity." *Calderon*, 113 F. App'x at 592 (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)); *see also Feist*, 730 F.3d at 454 (citing *Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

software." Cohen "[did] not contradict [UTHSC's] evidence that the clinical trial management software was a significant portion of her job duties, that her employer stopped using the clinical trial management software, or that she was not replaced."

Cohen resists the district court's conclusion by arguing that UTHSC's purported reason for terminating her is false. A plaintiff may demonstrate pretext "by showing that the employer's proffered explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (internal quotation marks and citation omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). We find that none of the evidence Cohen relies on casts doubt on UTHSC's articulated reason for terminating her employment.

Cohen first points to the fact that, although UTHSC states that her employment was terminated as part of a RIF, hers was the only position to be eliminated, i.e., she was part of a "RIF of one." She relies on out-of-circuit caselaw that treats such RIF-of-one terminations with suspicion. *See, e.g.*, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000) ("RIFs typically involve the layoff of many employees at once, and employers will not be allowed cynically to avoid liability by terming a decision to fire an employee with a unique job description as a 'RIF' when the decision in fact was nothing more than a decision to fire that particular employee."). Regardless of what other courts have found, Cohen ignores the context in which UTHSC ended her employment. UTHSC created Cohen's position to address a specific need—making a clinical trial management program called StudyManager operational. A review of the clinical data specialist position's job summary reveals that four of the nine critical tasks associated with the position revolved around the use of StudyManager. Once UTHSC decided not to use that

program, there no longer was a need for Cohen's position. In her deposition, Macleod stated that after UTHSC made the decision to stop using StudyManager (or its alternative, Velos), the "bulk" of Cohen's job disappeared, and Macleod had "difficulty keeping [Cohen] fully occupied." Cohen has presented no evidence rebutting this testimony, aside from obliquely referencing other work she did, including web management, data entry, and assistance with Microsoft Office products, none of which was the primary focus of the clinical data specialist position.

Cohen next quotes Macleod's deposition testimony that the position of clinical data specialist was not eliminated, but remained open at least until October 31, 2012. According to Cohen, this contradicts UTHSC's representation that it decided to eliminate Cohen's position on June 1, 2010. Had UTHSC decided to terminate Cohen's employment, kept the position open, and then filled it sometime later, we might agree that there was evidence of pretext. But the mere fact that UTHSC described the position as eliminated, while Macleod characterized it as open, does not constitute such evidence. Macleod herself stated that Cohen's position was never filled—"[i]t just . . . disappeared." The same reasoning applies to Cohen's evidence that UTHSC and Macleod disagreed over whether the clinical data specialist position was "grant-funded." But whether the position was "open" or "eliminated," grant-funded or not, it is undisputed that, for at least 17 months, no other UTHSC employee filled it. Together with the evidence that Cohen's primary job functions were no longer required after UTHSC abandoned use of StudyManager because of budget cuts, the discrepancy between UTHSC's and Macleod's descriptions is not evidence of pretext.

Cohen also relies on an email by Melton to Macleod, in which Melton discusses Cohen's accommodation request. According to Cohen, Melton in the email stated that: "Apparently, [Cohen] is playing games with us. And no[,]

we will not automatically buy the [voice-recognition] equipment since it may cause an undue hardship on [UTHSC]. Guess we need to speak with her tomorrow."[7] We reject Cohen's reliance on this evidence as it does not appear anywhere in the record. Cohen's record citations only refer us back to her own brief to the district court which, in turn, cites that part of Macleod's deposition that identifies an email as coming from Melton. Without knowing whether the language Cohen quotes is the entire email, or knowing the context in which the email was sent, we decline to find it evidence of pretext. Moreover, even considering only the language Cohen quotes, the email does not show that UTHSC's justification for terminating her is false. Construed in Cohen's favor, the email at best shows Melton discussing Cohen's ability to perform her job duties—it does not address the fact that those duties were no longer necessary, which is what UTHSC has argued.[8]

Considered individually and collectively, Cohen's evidence does not show that UTHSC's articulated reason for terminating her—a RIF—was pretext. Simply put, UTHSC was not required to keep Cohen employed in a position for which there no longer was a need, and Cohen has presented no evidence disputing this basic fact.

---

[7] On appeal, Cohen faults the district court for not separately considering that she made several requests for accommodations, including to work fewer hours, be given more time to complete tasks, and avoid manual work. But Cohen's amended complaint makes clear that she only sought relief on the basis that UTHSC retaliated against her for requesting voice-recognition software. Moreover, even if we were to consider these alternative accommodation requests, Cohen does not explain how they alter our pretext analysis.

[8] For the same reason, Cohen's reliance on her "great [job] evaluation" is irrelevant. That Cohen was good at her job simply does not matter if there no longer was a need for the position.

No. 13-40791

Accordingly, we hold that the district court did not err in granting UTHSC's motion for summary judgment and dismissing Cohen's claims under the Rehabilitation Act.

## IV. CONCLUSION

For the aforementioned reasons, the district court's judgment is AFFIRMED.