# United States Court of Appeals for the Fifth Circuit

———————————

No. 23-50713

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

October 8, 2024

Lyle W. Cayce
Clerk

Joanna Smith,

*Plaintiff—Appellant*,

*versus*

Honorable Frank Kendall, *Secretary of the Air Force*,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-1154

———————————————————————

Before King, Stewart, and Higginson, *Circuit Judges*.

Per Curiam:[*]

Plaintiff-Appellant Joanna Smith alleges that while an employee of the United States Air Force, she was subjected to various forms of discrimination, reported that discrimination, and was subsequently terminated in retaliation. Smith sued under Title VII, the Americans with Disabilities Act and the Age Discrimination in Employment Act of 1967. The district court dismissed all of Smith's claims for failure to state a claim.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50713

For the reasons stated below, we AFFIRM the district court's judgment dismissing Smith's Americans with Disabilities Act claim, her race-based Title VII claim, and her Age Discrimination in Employment Act claim. We VACATE the district court's judgment dismissing Smith's gender-based disparate treatment claim under Title VII, and REMAND for further proceedings consistent with this opinion. We REVERSE the district court's judgment dismissing Smith's retaliation claim under Title VII and REMAND for further proceedings consistent with this opinion.

## I. Background

Smith's third amended complaint alleges that she was terminated from her position at Lackland Air Force Base ("Lackland") in February 2021, after experiencing years of gender-based harassment and negative comments from colleagues, some about her race and perceived disability. Further, Smith alleges that after filing reports with the Equal Employment Opportunity Commission ("EEOC") about this harassment and discrimination, she was terminated in retaliation.

Smith begins her complaint on December 18, 2018 during an interview for a position at Lackland.[1] At that interview, Smith alleges she took a drink of water and a Section Chief responded by telling the interview panel that Smith "had to drink some water right now because she is disabled." Smith reported the incident to a supervisor in January 2019.

Next, she alleges that in early 2019, she started experiencing gender-based harassment in the workplace. Smith reports experiencing multiple incidents of harassment on January 16, 2019 alone: unwanted sexual advances from Roel Olvera, a program manager and her colleague, and retributory drug

---

[1] It is not clear from the face of the complaint whether this was Smith's initial interview at Lackland or if she was interviewing for a promotion.

testing after rejecting those advances; Olvera discussing his attempts to proposition Smith with another co-worker, Robert Frei, which included references to Smith's mixed-race heritage; Carl Salas, a supervisor, and Frei observing Smith was not wearing a wedding ring and Frei remarking "I got her now"; and Frei leering at her breasts. Smith reported the latter incident to a supervisor, Sylvia Reynolds, two days later.

Smith purportedly suffered continued harassment by Olvera and other Lackland employees through April 2019: Edward Almaguer, a contractor, asking a female co-worker to convince Smith to have sex with him and later telling Smith that he planned to call Smith's husband to tell him that he and other co-workers wanted Smith; Olvera whistling at her; Olvera continually approaching her cubicle despite her rejections; and Olvera staring at her breasts. And in February 2019, a co-worker told Olvera not to "go for" Smith because she had injuries from a car accident.

During this time, Smith alleges, she also became aware of harassment of other female employees. On one occasion, she heard Olvera tell a co-worker that he had sexual intercourse with another co-worker, Loretta Lopez. Additionally, another woman told Smith that "some female co-workers go for the sexual advances because they get more benefits and receive less work."

At the same time Smith was purportedly rejecting sexual advances, she alleges she began receiving negative feedback: she received an "Oral Admonishment" in February 2019 and a "Proposed Reprimand Action" in May 2019 from supervisors. On May 10, 2019, she alleges, Frei and Jesus Zuniga, a supervisor, both of whom had harassed her previously, issued her a "Verbal Counseling Memorandum for Record," and then, Zuniga winked, pointed at Smith, and said "yes" to another male co-worker walking by. The same day, Smith alleges, Lopez told Smith that Smith had been assigned a

heavy workload because she had rejected Olvera's advances. Several days later, she overheard Lopez speaking with Olvera, who told Lopez that he "did not want to see her anymore because he wanted [Smith]." Subsequently, Olvera solicited Smith for a sexual relationship "in exchange for benefits and less work."

Smith further alleges that on June 21, 2019, Reynolds issued Smith a "Decision to Reprimand," and that, on July 1, 2019, she received her "Midterm Review," which contained "derogatory comments" by Reynolds and Zuniga. In December of that year, Zuniga rated Smith poorly on nearly every metric in her performance evaluation. She asked for informal reconsideration, and Salas told her he would remove a derogatory comment but let other ratings stand. She met with Salas, who told her that Zuniga said he "could inflict additional stress" on her if she questioned her annual review or workload. Salas told her to file a "Formal Administrative Reconsideration Process Request." Smith alleges that, on January 2, 2020, she did so.

On March 5, 2020, a colonel in Smith's division formally reconsidered her performance evaluation but altered only one rating and refused to adjust other ratings or remove comments. Next on November 2, 2020, Salas purportedly forced Smith to "make a lateral move" to a new role in which she remained under Salas' supervision. On December 10, 2020, she received a "notice of proposed removal" from Salas that included a memorandum, dated October 26, 2020, with "discriminatory comments" about her. From then on, Smith "received unacceptable overall ratings and narratives."

Smith asserts that on January 27, 2021, Salas "refused to discuss the negative ratings" or provide her supporting documents. She was terminated on February 11, 2021. She alleges that she made multiple EEO complaints during 2019 and 2020, and that her work environment worsened while they

were pending.[2] In particular, she alleges that on January 11, 2021—a month before her firing—she contacted the Lackland "EO office" to report discrimination and retaliation.

Smith filed this suit against her former employer, the Secretary of the Air Force, in his official capacity ("Defendant") alleging race-, gender-, disability-, and age-based discrimination under Title VII, the Americans with Disabilities Act ("the ADA") and the Age Discrimination in Employment Act of 1967 ("the ADEA"). She also brought a retaliation claim under Title VII, alleging that she engaged in protected activities when she filed complaints with the EEOC and Texas Workforce Commission. Defendant moved to dismiss all claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and the district court granted that motion in full.

Smith moved to reconsider under Fed. R. Civ. P. 59(e), arguing that the district court erred by holding her claims to a heightened pleading standard that was inappropriate when evaluating a motion to dismiss. The district court rejected these arguments and denied her motion for reconsideration. Smith appealed.

## II. Discussion

### A. Standard of Review

"Dismissals for failure to state a claim are reviewed de novo." *Cody v. Allstate Fire & Cas. Ins. Co.*, 19 F.4th 712, 714 (5th Cir. 2021) (per curiam). At this stage in proceedings, a court must "accept all well-pleaded

---

[2] While Smith does not specify in her complaint to which EEO body she complained, she attached some of these complaints to her response to Defendant's motion to dismiss, and Defendant attached another to its reply. These documents show that she filed complaints with an internal Lackland EEO body and corresponded with employees with the title of Equal Opportunity & Negotiated Dispute Resolution Program Manager.

No. 23-50713

facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Mayfield v. Currie*, 976 F.3d 482, 485 (5th Cir. 2020) (quoting *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019)). Dismissal is appropriate if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B. Analysis

Courts use the *McDonnell Douglas* framework to assess the *ultimate proof* that a plaintiff must furnish to show disparate treatment or retaliation under each of the statutes governing Smith's claims. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03 (1973); *see, e.g.*, *Thomas v. Texas Dep't of Crim. Just.*, 220 F.3d 389, 393 (5th Cir. 2000) (Title VII); *Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 277-78 (5th Cir. 2014) (per curiam) (Rehabilitation Act); *Allen v. United States Postal Serv.*, 63 F.4th 292, 300-01 (5th Cir. 2023) (ADEA). A plaintiff who lacks direct evidence of discriminatory or retaliatory motive can establish a prima facie case by making certain showings under *McDonnell Douglas*.[3] *Allen*, 63 F.4th at 300-01.

---

[3] For discrimination claims, to establish a prima facie case a plaintiff must show that she (1) "is a member of a protected class"; (2) "was qualified for her position"; (3) "suffered an adverse employment action"; and (4) "others similarly situated were more favorably treated." *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999). For retaliation claims, to establish a prima facie case a plaintiff must show (1) "she engaged in protected activity"; (2) "she suffered an adverse employment action"; and (3) "a causal link exists between the protected activity and the adverse employment action." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). Once the plaintiff establishes the prima facie case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the employment action." *Rutherford*, 197 F.3d at 184. Then,

No. 23-50713

But "a plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Instead, a plaintiff must plead two "ultimate elements" in order "to support a disparate treatment claim . . . : (1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" *Cicalese v. University of Texas Medical Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quoting *Raj*, 714 F.3d at 331). Similarly, for a retaliation claim, a plaintiff only needs to plausibly "allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (quoting *Cicalese,* 924 F.3d at 768). In either context, "[a] court . . . inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Cicalese,* 924 F.3d at 767.

Smith argues that the district court "misappl[ied] summary judgment standards at the pleading stage," subjecting her claims to a scrutiny "more suited for the summary judgment phase." Defendant contends that the district court properly applied the motion to dismiss standard, and that Smith failed to meet it. Therefore, applying the standard set forth above, we examine each claim to determine if the district court erred in dismissing Smith's claims.

---

"the plaintiff counters by offering evidence that the legitimate, non-discriminatory reasons are really a pretext for discrimination." *Id.* at 180 (quoting *Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 337 (5th Cir.1999)).

## 1. ADA/Rehabilitation Act Claims

"The ADA prohibits discrimination against a qualified individual based on the individual's disability." *Gosby v. Apache Indus. Servs.*, 30 F.4th 523, 525 (5th Cir. 2022). Evaluating a claim under the Rehabilitation Act is "substantially the same" as under the ADA. *Wilson v. City of Southlake*, 936 F.3d 326, 330 (5th Cir. 2019). However, "[u]nder Section 504 [of the Rehabilitation Act], the plaintiff must establish that disability discrimination was the *sole* reason for the exclusion or denial of benefits." *Id.* (emphasis added).

As an initial matter, the court properly granted Defendant's Rule 12(b)(1) motion dismissing Smith's ADA claim because, by statute, "the entire federal government is excluded from the coverage of the ADA." *Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003). Smith opposed the motion to dismiss, arguing that she would amend her complaint to rely on the Rehabilitation Act. The district court declined to allow amendment because there were "no factual allegations" from which it could "reasonably infer that she is disabled" or "that her employer regarded her as having such an impairment." As the district court noted, the two facts related to disabilities alleged in the complaint—that someone stated she had to drink water because she was disabled and that someone mentioned she had injuries from a car accident—did "not support a reasonable inference that her employer regarded her as having any substantially limiting impairment" as is required for disability discrimination claims. *See E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 729 (5th Cir. 2007) (discussing the requirements for disability discrimination claims).

Therefore, Smith would have failed to state a claim under the Rehabilitation Act even had she been permitted to amend. Thus, we

AFFIRM the judgment of the district court dismissing Smith's claims under the ADA.

### 2. Title VII and ADEA Claims

A plaintiff must plead two "ultimate elements" in order "to support a disparate treatment claim . . . : (1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" *Cicalese,* 924 F.3d at 767 (citation omitted). Under the precedent at the time the district court ruled, "adverse employment actions consist[ed] of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014), *abrogated by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023). Properly applying *Thompson*, the district court found only one adverse employment action: Smith's termination. Based on this then-accurate universe of possible adverse employment actions, the district court dismissed Smith's discrimination claims because her operative complaint contained no allegations that lead to an inference that she was *terminated* due to a protected status.

However, seven days after the district court issued its opinion, the Fifth Circuit changed that universe of possible adverse employment actions when it decided *Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023) (en banc). Although the district court correctly decided that only Smith's termination constituted an adverse employment action under then-existing precedent, "changes in precedent generally apply to cases pending on appeal." *Utah v. Su*, 109 F.4th 313, 319–20 (5th Cir. 2024); *see also Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005) ("[T]he potentially important change in decisional law occurred while the appellants' appeal was still pending. It is well-settled that in such cases the new law must be applied with the full force of the precedent that it is.").

In *Hamilton*, our en banc court held "that a plaintiff plausibly alleges a disparate-treatment claim under Title VII if she pleads discrimination in hiring, firing, compensation, or the 'terms, conditions, or privileges' of her employment." 79 F.4th at 497. Therefore, a plaintiff "need not also show an 'ultimate employment decision,' a phrase that appears nowhere in the statute and that thwarts legitimate claims of workplace bias." *Id. Hamilton* both acknowledged that Title VII "does not permit liability for de minimis workplace trifles," but also declined to address "the precise level of minimum workplace harm" necessary to sustain a discrimination claim. *Id.* at 505. Subsequently, the Supreme Court ruled in *Muldrow v. City of St. Louis* that, at least in the context of a forced transfer, "[a]lthough an employee must show some harm . . . to prevail in a Title VII suit, she need not show that the injury satisfies a significance test." 601 U.S. 346, 350 (2024).

Despite the change in precedent, neither party discussed *Hamilton* in its briefing or oral argument. Typically, we treat such an omission as precluding our consideration of an issue. *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023) ("Parties forfeit contentions by inadequately briefing them on appeal."). Yet, "[w]e have frequently held that in the exercise of our appellate jurisdiction we have power not only to correct error in the judgment under review but to make such disposition of the case as justice requires." *Concerned Citizens of Vicksburg v. Sills*, 567 F.2d 646, 649-50 n.5 (5th Cir. 1978) (quoting *Patterson v. Alabama*, 294 U.S. 600, 607 (1935)). Further, "in determining what justice does require, the Court is bound to consider any change, either in fact or in law, which has supervened since the judgment was entered." *Id.* at 650 n.5. Therefore, notwithstanding Smith's failure to brief the potential impact of *Hamilton*, we consider it. *C.f. Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442, 446–47 (5th Cir. 2014) (per curiam) (considering change in interpretation of Title VII "handed down

No. 23-50713

after the district court's decision but prior to the briefing in this court," even though appellant "did not discuss the consequences" of change in briefing).

### i. Gender-Based Discrimination

The district court dismissed Smith's gender discrimination claims, ruling that, because the last factual allegations of gender discrimination were almost two years before her termination, she did not allege any gender-related discrimination continuing through the time of her firing.[4] Additionally, while she alleges that one supervisor was involved with her employment before and after her transfer, she did not allege that he terminated her because of her gender. However, under *Hamilton*, Smith's complaint identifies actions other than her termination that *could* potentially constitute adverse employment actions to form the basis for a gender-based Title VII discrimination claim.[5]

---

[4] The only other action the district court addressed in detail as a potential adverse employment action was Smith's lateral transfer in November 2020. The district court determined the transfer did not constitute an adverse employment action because Smith did not "provide [any] factual allegations to reasonably infer that this transfer is the equivalent of a demotion." The "equivalent of a demotion" language reflects the pre-*Hamilton* requirement for considering a transfer an adverse employment action. *See Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).

[5] For example, Smith alleges she was forced to transfer to a new role. As the Court noted in *Muldrow*, "[m]any forced transfers leave workers worse off respecting employment terms or conditions." 601 U.S. at 355. Smith also alleges ongoing harassment from multiple employees. As the *Hamilton* court noted, the Supreme Court "has held that even a discriminatory and hostile work environment—when sufficiently severe or pervasive—can rise to the level of altering the terms, conditions, or privileges of employment for Title VII purposes." 79 F.4th at 503 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). Perhaps other allegations in Smith's complaint rise to the level of altering the terms, conditions, or privileges of her employment. *See Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 428 (5th Cir. 2023) (per curiam) ("Until August of 2023, [plaintiff]'s complained-of acts in this case would not have stated a Title VII claim because they did not concern an 'ultimate employment decision' under our older (and narrower) Title VII precedent. But [*Hamilton*] made clear that Title VII requires a broader reading

No. 23-50713

We entrust the district courts with making these determinations in the first instance. *Fanning v. City of Shavano Park*, 853 F. App'x 951 (5th Cir. 2021) (per curiam) ("[W]hen material changes of fact or law have occurred during the pendency of an appeal, it is our 'preferred procedure' to remand and 'give the district court an opportunity to pass on the changed circumstances.'" (quoting *Concerned Citizens of Vicksburg v. Sills*, 567 F.2d 646, 649–50 (5th Cir. 1978))); *see, e.g.*, *Johnson-Lee v. Texas A&M Univ. - Corpus Christi*, No. 2:23-CV-00229, 2024 WL 3196764, at *4 (S.D. Tex. Apr. 11, 2024) (finding assignment to "undesirable work assignments" can constitute an adverse action under *Hamilton* (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70–71 (2006))); *Smith v. McDonough*, No. SA-22-CV-01383-JKP, 2023 WL 5918322, at *5 (W.D. Tex. Sept. 8, 2023) (applying *Hamilton* in the first instance to find plaintiff "sufficiently pled he suffered adverse employment action based on unfair scrutiny of his work and having his telecommuting agreement revoked"). Of course, even so, Smith must still satisfy the second pleading requirement under Title VII: that any newly qualifying adverse employment action was "taken against [her] *because of* her protected status." *Cicalese*, 924 F.3d at 767.

Therefore, we VACATE the judgment of the district court dismissing Smith's gender-based Title VII claims, and REMAND for consideration of (1) whether any of the other allegations raised by Smith's complaint constitute an adverse employment action under *Hamilton*, and (2) if so, whether Smith sufficiently alleges that those actions were taken against her because of her protected status.

---

than our 'ultimate employment decision' line of cases permitted and thus 'end[ed] that interpretive incongruity' by removing that requirement." (citations omitted)). These potential actions *may* not suffer from the same time gap or supervisor involvement problems the district court found with Smith's termination.

### ii. Race-Based Discrimination

Smith also advanced race-based Title VII claims. This court has affirmed dismissals of discrimination suits when a plaintiff "did not allege any facts, direct or circumstantial, that would suggest [the defendant's] actions were based on [the plaintiff's] race or national origin or that [the defendant] treated similarly situated employees of other races or national origin more favorably." *Raj*, 714 F.3d at 331. Regarding her race, Smith cites one instance in which she overheard a conversation between two male co-workers in which one told the other that Smith could not go out with him because she was "mixed." But she makes no factual allegations to suggest that her race motivated *any* actions taken against her or otherwise impacted the terms, conditions, or privileges of her employment. Therefore, we AFFIRM the district court's judgment dismissing Smith's race-based claims under Title VII.

### iii. Age-Based Discrimination

Smith also raised age-based ADEA claims. *Hamilton* and *Muldrow*, though decided in the Title VII context, apply equally to ADEA discrimination claims. *See Yates v. Spring Indep. Sch. Dist.*, No. 23-20441, 2024 WL 3928095, at *4 n.4 (5th Cir. Aug. 26, 2024) ("*Hamilton* and *Muldrow* apply with equal force to [plaintiff's] ADEA discrimination claim."); *see also Smith v. City of Jackson*, 351 F.3d 183, 188 (5th Cir. 2003) (explaining that it "is no coincidence" that "the core sections" of the ADEA and Title VII "overlap[] almost identically," as "the prohibitions of the ADEA were derived *in haec verba* from Title VII" (quoting *Lorillard v. Pons*, 434 U.S. 575, 584 (1978))); *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 787 (6th Cir. 2024) (applying *Muldrow* "in the ADEA context"). However, aside from a single page of Smith's complaint recounting the elements of an age discrimination claim, she does not mention age at all. Accordingly, we

AFFIRM the district court's judgment dismissing Smith's age-based claims under the ADEA.

### 3. Retaliation Claim

A plaintiff makes a prima facie case for retaliation by showing that "1) she engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action." *Wright*, 990 F.3d at 433. Though a plaintiff need not submit evidence to establish a prima facie case of retaliation at the pleading stage, he or she still must plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss. *Id.*

Both parties agreed, and neither party contests on appeal, that, as alleged, Smith (1) engaged in a protected activity by filing her EEO report on January 11, 2021, and (2) suffered an adverse employment action when she was terminated one month later.[6] At issue here is whether Smith sufficiently alleged the third element: a causal link. A plaintiff must "allege facts permitting at least an inference of her employer's knowledge of her protected conduct in order to establish the required causal link between her conduct and the alleged retaliation." *Wright*, 990 F.3d at 434.

Despite the temporal proximity between Smith's report and her termination, the district court ruled that she provided no factual allegations that allow a reasonable inference of a causal connection between her protected activity and her termination, pointing specifically to her failure to include "any allegation that Defendant had the requisite knowledge of that

---

[6] Although Smith's operative complaint also alleged Defendant improperly retaliated against her for internal complaints to supervisors, Smith's appellate briefing focused on her termination after filing EEOC complaints. Therefore, we address only the alleged retaliation for filing EEOC complaints.

protected activity." Smith argues that she successfully showed Defendant's requisite knowledge because "[a]t the motion to dismiss stage, [her] history of multiple EEO complaints (that were all pending at the time of termination) is enough to infer that the employer had knowledge" of her protected activity, even though she did not name the decisionmaker in her firing. She contends that discovery is necessary to determine whether decisionmakers had actual knowledge of her protected activity or were influenced to take the retaliatory action by a "person with a retaliatory motive."

"[T]emporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). However, "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." *Swanson v. GSA*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997). The district court cited to its decision in *Alvarado v. Texas Health & Human Services Commission* for the proposition that "[w]ithout knowledge of the protected activity, temporal proximity standing alone is insufficient to show a causal link." No. SA-19-CV-0106-JKP, 2022 WL 707225, at *5 (W.D. Tex. Mar. 9, 2022). *Alvarado*, in turn, cited to several Fifth Circuit decisions that provide support for this conclusion. *See, e.g.*, *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) ("In order to establish the causal link between the protected conduct and the illegal employment action as required by the prima facie case, the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity."); *Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity."). Relying on *Alvarado* and its supporting case law, the district court

held that Smith's failure to allege Defendant's knowledge of her protected activity meant she had not adequately alleged causation.

However, this circuit has been neither so explicit nor consistent in enforcing a separate, free-standing knowledge requirement at the pleading stage. This circuit has often, but not universally, found temporal proximity on the scale of weeks to a few months sufficient to establish a causal link. *See, e.g.*, *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022) ("An interval of weeks between [plaintiff's] complaints and her termination is certainly close timing, so we agree with the district court and hold that [plaintiff] has established a prima facie case."); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that "a time lapse of up to four months has been found sufficient to satisfy the causal connection" even at the more burdensome summary judgment phase) (citation omitted); *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (holding that ten-week temporal proximity between protected conduct and allegedly retaliatory action "still fits comfortably within the time period[]" that creates an inference of causation).

Further, some prior decisions suggest that sufficient temporal proximity satisfies, or dispenses with, any need to demonstrate employer knowledge of the protected activity. That is because *Wright*'s command—that a plaintiff "allege facts permitting at least an inference of her employer's knowledge"—does not inherently require a separate allegation of employer knowledge. For example, where a district court required that a plaintiff demonstrate a decisionmaker's knowledge of protected activity to establish the causal-connection element of the prima facie case, this circuit described it as "error" because "the short time between [plaintiff's] protected acts and [plaintiff's] firing is *itself* enough to show causation." *January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023). As the court reasoned, "[w]hile generally, a causal link is established when the evidence demonstrates that

the employer's decision to terminate was based in part on knowledge of the employee's protected activity, it can also be established simply by showing close enough timing between the two events." *Id.* (cleaned up); *see also Cox v. DeSoto Cnty.*, 407 F. App'x 848, 851–52 (5th Cir. 2011) (per curiam) ("*Absent an inference of causation due to temporal proximity*, we have 'determined that, in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity.'" (emphasis added) (quoting *Manning*, 332 F.3d at 883)). Additionally, this circuit has found a plaintiff sufficiently pleaded causation to survive a motion for summary judgment based on a one-week gap between the protected activity and adverse employment action—even though the record was unclear on both the identity of the decisionmaker for the adverse action and when that decision was made. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 306 & n.29 (5th Cir. 2020).

All of this to say, the rules governing causation pleading for Title VII retaliation claims are not quite so rigid as the district court made them out to be. Ultimately, the allegations provided in Smith's complaint and the discrimination complaints attached to Defendant's motion to dismiss are enough to "nudge [her] claims across the line from conceivable to plausible." *Cicalese*, 924 F.3d at 768 (5th Cir. 2019) (citing *Twombly*, 550 U.S. at 547).[7]

---

[7] "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotations omitted). This includes documents that a defendant attaches to a motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). This court has found it proper for courts to consider EEOC charges when they meet these specifications. *See Adams v. Columbia/HCA of New Orleans, Inc.*, No. 22-30389, 2023 WL 2346241, at *2 n.4 (5th Cir. Mar. 3, 2023) (per curiam).

Specifically, Smith described a work environment full of gender-based harassment that "worsened" throughout 2019 and 2020 as she filed EEO complaints naming her colleagues. Smith listed Salas as a witness in her June 2019, January 2020, and September 2020 EEO complaints. As part of the record, Smith and Defendant included four EEO complaints that list numerous additional witnesses to aid the EEO investigations, from which a court can infer that multiple people at Lackland likely knew of the existence of the complaints, if not their contents. *C.f. Wright*, 990 F.3d at 434 (inferring decisionmaker knowledge at the pleading stage based on circumstantial indicators and temporal proximity); *see also Briceno-Belmontes v. Coastal Bend Coll.*, No. 2:20-CV-114, 2022 WL 673854, at *6 (S.D. Tex. Mar. 5, 2022) ("[P]leading enough facts to state a plausible claim of retaliation simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence sufficient to state a claim. Discovery will reveal whether the decisionmaker(s) had actual knowledge of [plaintiff's] protected activity . . . ." (internal quotations and citation omitted)). Therefore, the district court erred in dismissing Smith's retaliation claim at this stage.

Accordingly, we REVERSE the district court's judgment dismissing Smith's retaliation claim and REMAND for further proceedings consistent with this opinion.

## III. Conclusion

For the reasons stated above, we AFFIRM the district court's judgment dismissing Smith's ADA claim, her race-based Title VII claim, and her ADEA claim. We VACATE the district court's judgment dismissing Smith's gender-based disparate treatment claim under Title VII, and REMAND for further proceedings consistent with this opinion. We REVERSE the district court's dismissal of Smith's retaliation claim under

No. 23-50713

Title VII and REMAND for further proceedings consistent with this opinion.